UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ORLANDO JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:13CV105 SNLJ |
| | ) | |
| IAN WALLACE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for summary judgment.

The matter has been fully briefed and is ripe for disposition.  For the following reasons,

the motion will be granted.

**I.      Background**

In December 2012, plaintiff Orlando Jones was an inmate at Southeast

Correctional Center (SECC) in Charleston, Missouri and was housed in the

administrative segregation unit in a two-man cell with another inmate, JE.  On or about

December 28, 2012, JE assaulted plaintiff.  Plaintiff filed this action pursuant to 42

U.S.C. § 1983 alleging that prison officials failed to protect him from a substantial risk of

serious harm in violation of the Eighth Amendment.  Defendants Ian Wallace, Cheryl

Thompson, Daron Hyte, Donna Wigfall, Ryan Moss, Anthony Parker, Joseph Enderlee,

Charles Brown, Benjamin Essex, Brett Hays, Jessie May, and Farrah Boyd were

employees at SECC at the time of the assault.  Defendants filed a joint motion for

summary judgment.  In support of their motion, defendants maintain that there is no

evidence that plaintiff was at a substantial risk of serious harm or that defendants knew

of, but disregarded, a serious risk to plaintiff's safety.  For these reasons, defendants

contend they are entitled to judgment as a matter of law in their favor.

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may

grant a motion for summary judgment if all of the information before the court

demonstrates that "there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.  317, 322

(1986).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated*

*Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges

this burden, the nonmoving party must do more than show that there is some doubt as to

the facts.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S.  574, 586

(1986).  Instead, the nonmoving party bears the burden of setting forth specific facts

showing that there is sufficient evidence in his favor to allow a jury to return a verdict for

him.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.  242, 249 (1986); *Celotex*, 477 U.S. at

324.

In ruling on a motion for summary judgment, the court must review the facts in a

light most favorable to the party opposing the motion and give that party the benefit of

any inferences that logically can be drawn from those facts.  *Matsushita,* 475 U.S. at 587;

*Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005).  The Court may not

"weigh the evidence in the summary judgment record, decide credibility questions, or

determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210

F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of

evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical*

*Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III.    Facts**

The Court has reviewed the parties' statements of uncontroverted material facts,

the responses, and the supporting documentation,[1] and, where appropriate, will accept

facts as supported by appropriate admissible evidence. The following facts are before the

Court on this motion. Additional facts are set forth in the discussion.

Plaintiff was assaulted by his cellmate, JE, on December 28, 2012.[2] As a result of

the injuries he received during the assault, he was transported out of the prison to

Missouri Delta Medical Center for treatment. Plaintiff suffered three broken bones in his

face, lost three teeth, and required ninety-four stitches. Plaintiff and JE had been

cellmates for approximately two months before JE assaulted plaintiff.[3]

---

[1] The parties submitted excerpts of the deposition testimony of plaintiff, Ian Wallace, Donna Wigfall, Brett Hays, and Jerome Kizer. Defendant Wallace was the Warden at SECC. Defendant Wigfall is currently a Functional Unit Manager at SECC. She was a case manager and may have been plaintiff's case manager in December 2012. Defendant B. Hays is a correctional officer at SECC. Kizer is a correctional officer at SECC and responded to the cell shared by plaintiff and JE following the assault.

[2] There is a discrepancy as to the date of the assault but it is not significant for purposes of this motion.

[3] Plaintiff attempts to dispute this fact. Although he acknowledges that Wigfall testified that her reading of the housing assignments showed that plaintiff and JE were in a cell together for approximately two months, he contends CO Kizer could only commit to their sharing a cell for a "good strong week." However, the page of CO Kizer's deposition referenced in support of this contention is not included in the record before the Court.

Plaintiff and JE had been cellmates on a prior occasion. A physical altercation occurred during the first time they shared a cell. Plaintiff described it as a wrestling match during which he "got the best of [JE]." Plaintiff and JE agreed not to tell anyone about the altercation. Plaintiff testified that he and JE got along because JE did not "put his hands" on plaintiff. Up to and including December 2012, plaintiff was not listed as an enemy on JE's enemy list and JE was not on plaintiff's enemy list.

Plaintiff testified that when he was placed in a cell with JE, he asked Jay Hays ("J. Hays")[4] for protective custody from JE and that J. Hays threatened to spray plaintiff with mace if he complained. Plaintiff told J. Hays that he didn't want JE in the cell with him, that he wanted protective custody away from him, and that "he didn't want to be around this man." Plaintiff told CO Cossey[5] that he wanted protective custody from JE because "we ain't, you know what I'm saying, clicking right." Plaintiff testified Cossey told him his protective custody needs were being met.

Just prior to the assault, JE told plaintiff that someone had offered to pay JE to hurt plaintiff. JE told plaintiff he would not hurt him because he was too cool for that. Plaintiff testified that after JE told him about the offer to hurt him, plaintiff went to sleep but only after JE told plaintiff he was not going to hurt him.

Plaintiff submitted three kites asking for protective custody from JE to SECC employees Thompson, Cossey, and Wigfall. A kite is an informal note offenders write and send to different prison employees by way of the correctional officers. Kites can be

_____

[4] J. Hays is not a named defendant.

[5] Cossey is not a named defendant.

anything from trivial requests to requests for protective custody. SECC employees receive a lot of kites on a daily basis. Plaintiff testified that he received responses to the kites stating his protective custody needs were being met including a response from Hyte answering the kite plaintiff sent to Wigfall. Plaintiff gave those responses to the clerk in the law library to make copies but the papers were forwarded to case manager Buhs, who destroyed the copies.

Plaintiff testified that although he didn't have problems with JE, he submitted the kites because he "had a feeling" and that he didn't know how JE felt about him. Additionally, JE was always "talking noise" to him and threatening him. Plaintiff testified he sent kites because JE told him about the offer to hurt him and that he sent the kites "way before" December 28. Plaintiff also testified that he submitted an informal resolution request ("IRR") requesting protective custody. However, SECC has no IRRs in its possession from plaintiff requesting protective custody from JE.

Plaintiff spoke with Thompson and Wigfall about the kites. He asked Thompson "can I get PC? Please, I need it" but Thompson just walked away. Plaintiff asked Wigfall if she got his kite asking for protective custody from JE and she replied his protective custody needs were being met. Plaintiff testified that Hyte also told him that his protective custody needs were being met. When plaintiff was asked specifically what he wrote in his kites, he testified "that I need PC away from JE."

## IV.    Discussion

Plaintiff alleges the defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by failing to protect him from the assault by his

cellmate. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994) (internal quotation marks and citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To establish a violation of the Eighth Amendment due to failure to protect, a plaintiff must make two showings. First, the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. "This objective requirement ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." *Jensen v. Clarke,* 94 F.3d 1191, 1197 (8th Cir. 1996). "Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the [plaintiff]." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007). No liability attaches to a prison official without subjective knowledge – that is, unless the plaintiff can prove the official both "knew of and disregarded an 'excessive risk to inmate health or safety'" *Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir.2011) (quoting *Farmer,* 511 U.S. at 834). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. "This subjective state of mind must be present before a plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Lenz*, 490 F.3d at 995

(quoting *Blades v. Schuetzle*, 302 F.3d 801, 803 (8th Cir. 2002) (internal quotation marks and citations omitted)).

Defendants argue there is no evidence that plaintiff was at a substantial risk of serious harm or that they knew of, but disregarded, a serious risk to plaintiff's safety. According to plaintiff's own testimony, defendants Wallace, Moss, Parker, Enderlee, Brown, Essex, B. Hays, May, and Boyd did not know of, or disregard, a serious risk to plaintiff's safety. Plaintiff testified that he spoke with defendant Wallace *after* the assault inquiring as to why his requests for protective custody as to JE had been ignored. Additionally, plaintiff testified that defendants Moss, Parker, Enderlee, Brown, Essex, B. Hays, May, and Boyd had nothing to do with his requests for protective custody with regard to JE or the denial of those requests.[6] Specifically, he admitted that he did not submit requests for protective custody to those defendants and that they did not deny him protective custody as to JE. Therefore, defendants Wallace, Moss, Parker, Enderlee, Brown, Essex, B. Hays, May, and Boyd are entitled to judgment as a matter of law in their favor.

As to defendants Thompson, Hyte, and Wigfall, plaintiff argues that they were aware of his requests for protective custody and wrongfully denied his requests. Plaintiff testified that he flew kites to Thompson and Wigfall,[7] which stated "I need PC away from JE" and that he also asked Thompson "[C]an I get PC? Please, I need it." Although

---

[6] Plaintiff testified as to complaints he had with regard to defendants Moss, Parker, May, and Boyd on unrelated matters and that defendants Enderlee, Brown, and Essex made inappropriate remarks to him after the assault.

[7] Plaintiff testified that he also flew a kite to Cossey.

plaintiff did not personally tell Hyte that he needed protective custody from JE, Hyte responded to the kite plaintiff sent to Wigfall. Plaintiff received responses to his kites stating that his protective custody needs were being met. Additionally, plaintiff asked Wigfall if she had received his kite about protective custody away from JE and she told him his protective custody needs were being met.

The only testimony from plaintiff that he told anyone JE had threatened him or that they were not getting along was as to corrections officers J. Hays and Cossey. Plaintiff testified that he told J. Hays, "No. I don't want the dude in the cell with me. I want PC away from the dude. Jay Hays, he threatened me." He asked Cossey, "can I get PC from this dude, because we ain't, you know, what I'm saying, clicking right?" Officers J. Hays and Cossey, however, are not named defendants. There is no testimony connecting those requests for protective custody with defendants Thompson, Hyte, or Wigfall. Further, plaintiff testified that he and JE kept quiet about the first altercation they had and did not tell any of the guards about the fight.

Plaintiff argues that the facts here are similar to the facts in *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007). In *Young*, the court denied summary judgment to prison officials on a failure to protect claim where Young's cellmate threatened him, he told the defendants about the threats and requested to be removed from the cell, his requests were ignored, and he was later assaulted by his cellmate. Here, however, there is a significant difference. Although plaintiff testified that he had a feeling that JE was going to do something to him, JE was always talking noise to him, JE was threatening him, and JE

told him someone offered to pay JE to hurt him, there is no evidence or testimony that plaintiff conveyed this information to defendants Thompson, Hyte, or Wigfall.

Instead, the testimony with regard to his requests for protective custody as to defendants Thompson, Wigfall, and Hyte shows only that he told them he wanted protective custody without any explanation. As a result, even if plaintiff could establish that he was incarcerated under conditions that posed a substantial risk of serious harm, he cannot show, even viewing the facts in a light most favorable to him, that defendants Thompson, Hyte, and Wigfall acted with deliberate indifference. *See Irving v. Crawford*, 1:09CV161 SNLJ, 2011 WL4055664, at *5-6 (E.D. Mo. Sept. 13, 2011) (plaintiff's kites to defendants that he and his cellmate were incompatible were insufficient to establish deliberate indifference where the kites did not mention that plaintiff's cellmate was a threat to him). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

Plaintiff has not submitted any evidence to show that defendants Thompson, Hyte, and Wigfall both knew of and disregarded any threat of violence, impeding harm, or substantial risk to his safety. Further, plaintiff has not submitted any evidence to show that the defendants were aware of any facts from which the inference could be drawn that a substantial risk of harm existed. *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."). Again, although plaintiff testified that he had a feeling that JE was going to do something to him, JE was always

9

talking noise to him, JE was threatening him, and JE told him someone offered to pay JE to hurt him, there is no evidence that plaintiff conveyed this information to defendants Thompson, Hyte, or Wigfall or that they were otherwise aware of those facts.

The facts here differ significantly from other failure to protect cases where defendants' motions for summary judgment have been denied based on evidence that the plaintiff conveyed his fear of his cellmate or threats made by his cellmate to prison officials. *See Young v. Selk*, 508 F.3d 868 (8th Cir. 2007) (defendants' motion for summary judgment on failure to protect claim denied where plaintiff told prison officials that he had been threatened by his cellmate, that his cellmate was deranged, that something was wrong with his cellmate, and that he needed to be moved immediately); *Johnson v. Doyle*, 4:07CV1843 AGF, 2011WL 846141 (E.D. Mo. Mar. 8, 2011) (defendants' motion for summary judgment denied where plaintiff testified that he handed kites to defendants explaining his fear of another inmate and requesting that one of them be moved to a different housing pod); *Dykes v. Mitchell*, 4:07CV733 CAS, 2009 WL 1543753 (E.D. Mo. June 2, 2009) (defendants' motion for summary judgment denied where there was a genuine issue of material fact as to whether plaintiff reported threats of violence by another inmate and his fear of serious harm to prison officials).

While it is regrettable that plaintiff was assaulted by his cellmate, the defendants cannot be held liable because they had no prior knowledge of any threat or substantial risk to plaintiff's safety. Because plaintiff's evidence fails to satisfy the subjective prong of his failure to protect claim, defendants Thompson, Hyte, and Wigfall are entitled to judgment as a matter of law in their favor.

10

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (ECF #37) is **GRANTED**. A separate Judgment will accompany this Memorandum and Order.

Dated this 14th day of May, 2015.

 

 

_____

STEPHEN N.  LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE